IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIFINY DAWN BRINER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-513-K |
| | § | |
| JOSHUA INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

After Plaintiff Tifiny Dawn Briner filed a first amended complaint [Dkt. No. 32] (the "FAC"), Defendant Joshua Independent School District ("JISD" or the "District") answered, *see* Dkt. No. 33. Briner then designated expert witnesses. *See* Dkt. No. 34. And JISD moved to exclude their testimony, *see* Dkt. No. 35, and for summary judgment on Briner's claims, *see* Dkt. No. 36.

The parties briefed both motions filed by JISD, and the District moved to strike Briner's summary-judgment evidence. *See* Dkt. Nos. 37-43.

United States District Judge Ed Kinkeade then referred the three motions (to exclude expert testimony, for summary judgment, and to strike evidence) to the undersigned United States magistrate judge for, as applicable, determination or recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 44.

For the reasons and to the extent explained below, the Court should deny the motion to strike as submitted and instead treat it as objections and grant in part and deny in part the motion for summary judgment.

And the undersigned will enter a separate memorandum opinion and order as to the motion to exclude expert testimony.

## Applicable Background

Briner, a U.S. Army veteran, was employed as a special education teacher at JISD. During the school year that started in Fall 2021, she was assigned to the Behavioral Intervention Classroom ("BIC") at Loftin Middle School. In October, she was assaulted by a student in that classroom, who ripped window blinds off the wall that then struck Briner in the back of the head.

As a result of this assault, Briner applied for leave under a provision of the Texas Education Code, which leave JISD denied. Briner appealed to the Texas Commissioner of Education (the "Commissioner"), who found, in June 2024, that Briner was properly denied leave under Texas law.

And the District non-renewed Briner's teaching contract in April 2024.

Through the FAC, Briner brings claims under the Americans with Disabilities Act and the ADA Amendments Act, 42 U.S.C. § 12101 *et seq.* (collectively the "ADA") and the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301-4335 ("USERRA") for discrimination (based on disability, military status or service) and retaliation (because her teaching contract was not renewed after she asserted the wrongful-employment-practice claims). And she asserts a state law worker's compensation retaliation claim.

JISD moves for summary judgment on the ADA discrimination claims [Counts 1 and 2], the USERRA discrimination claims [Counts 3 and 4], the ADA retaliation

claim [Count 5], the worker's compensation retaliation claim [Count 6], and its affirmative defense based on the Commissioner's decision.

### Motion to Strike

As a preliminary matter, JISD moves to strike summary-judgment evidence offered by Briner. *See* Dkt. No. 42.

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

So "[t]here is no need to make a separate motion to strike." FED. R. CIV. P. 56 advisory committee's note to 2010 amendments; *accord Adams v. Untied Assoc. of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the U.S. & Canada, AFL-CIO, Local 198*, Civ. A. No. 98-400-JWD-RLB, 2020 WL 1856191, at *1 (M.D. La. Apr. 13, 2020) ("For approximately the past nine years, recommended federal practices have entailed considering objections to evidence offered in support of or in opposition to motions for summary judgment in conjunction with the actual motion for summary judgment as opposed to a separate motion to strike, similar to the practice of objecting to evidentiary offerings at trial." (citations omitted)).

And the Court need not strike the objected-to evidence, as the undersigned will address what consideration, if any, and what weight, if any, the Court should afford the challenged evidence – as well as all evidence submitted by the parties – in conjunction with considering the summary judgment motion and, for that reason, recommends that the Court deny the motion to strike as submitted and instead treat it as objections accounted for in these findings, conclusions, and recommendation.

*See, e.g.*, *Lewis v. LSG Sky Chefs*, No. 3:14-cv-3107-M-BN, 2016 WL 6902546, at *5 (N.D. Tex. Oct. 26, 2016), *rec. accepted*, 2016 WL 6905960 (N.D. Tex. Nov. 22, 2016).

## Summary Judgment Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R.

CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence

favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007); *accord Wilson v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-34-G-BN, 2020 WL 825819, at *7 (N.D. Tex. Jan. 17, 2020) ("[B]eyond peradventure" means "beyond doubt." (cleaned up)), *rec. accepted*, 2020 WL 821034 (N.D. Tex. Feb. 18, 2020).

The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Summary Judgment Analysis

Briner alleges that, based on the October 2021 assault in the BIC classroom, she "suffered physical injuries to her head and to various parts of her nervous system, which physical injuries have resulted in numerous symptoms common to both concussions and post-concussion syndrome ('PCS')." Dkt. No. 32 at 3 (cleaned up).

She further alleges that JISD denied her request for assault leave after it learned "that all of Briner's physical symptoms were caused by her prior existing [post-traumatic stress disorder (or "PTSD")], and that none were a result of the assault." *Id.*

Considering her PCS and her history and record of PTSD – which PTSD, Briner asserts resulted from a sexual assault that occurred while she was in the Army, serving in South Korea – Briner alleges that JISD unlawfully discriminated against based on a disability (under the ADA) and her military service (under USERRA).

And she asserts that, after she filed (1) an EEOC charge and (2) this lawsuit, JISD retaliated against her by non-renewing her teaching contract.

I.  The Court should grant JISD summary judgment on Briner's state law worker's compensation retaliation claim [Count 6].

Briner concedes that JISD is immune from her state law worker's compensation retaliation claim and agrees that that claim should be dismissed. *See* Dkt. No. 39 at 5; *see, e.g.*, *Chaves v. McLeod Indep. Sch. Dist.*, No. 2:22-cv-00310-JRG-RSP, 2023 WL 2817221, at *2-*3 (E.D. Tex. Mar. 20, 2023), *rec. adopted*, 2023 WL 2815150 (E.D. Tex. Apr. 6, 2023).

II.    The Court should grant JISD summary judgment on Briner's USERRA claims [Counts 3 and 4].

To the extent that Briner asserts that JISD discriminated against her under USERRA when it denied her requests for assault leave, it appears that Briner brings her USERRA claim under 38 U.S.C. § 4311, which "concerns discrimination against those in the military when making employment decisions." *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 545 (5th Cir. 2013).

"A Section 4311 claim requires a plaintiff to prove his or her 'membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action.'" *Id.* (quoting 38 U.S.C. § 4311(c)(1)).

"A 'motivating factor' means that the adverse employment decision was motivated by an 'antimilitary bias.'" *Castillo v. City of Grand Prairie, Tex.*, No. 3:19-cv-2191-L, 2019 WL 5578556, at *3 (N.D. Tex. Oct. 29, 2019) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)).

And, for such an alleged violation,

[t]he employee bears the initial burden of showing that his military service was a motivating factor in the adverse employment action[, and i]f this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.

*Bennett v. Dall. Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 787 (N.D. Tex. 2013) (citations omitted).

Briner asserts that JISD discriminated against her under USERAA based on the PTSD that originated from her military service.

But "[a] PTSD injury alone is not enough to raise a cognizable discrimination claim under USERRA," because "the fact that [a plaintiff's] injury occurred during his military service does not transform his allegation into a USERRA claim." *Holmes v. Dep't of Justice*, 498 F. App'x 993, 995 (Fed. Cir. 2013) (per curiam).

That is, "USERRA prohibits discrimination based on military status alone rather than on conditions stemming therefrom," *Arroyo v. Volvo Grp. N. Am., LLC*, 93 F.4th 1066, 1071 (7th Cir. 2024), which means that "a USERRA plaintiff has the initial burden of demonstrating that his military *service*, as distinct from a *disability* resulting from service, was a substantial or motivating factor in the employer's decision," *Carroll v. Del. River Port Auth.*, 89 F. Supp. 3d 628, 633 (D.N.J. 2015); *see, e.g.*, *Bennett*, 936 F. Supp. 2d at 788 ("Although Bennett was injured and developed PTSD during his military service, Bennett points to no evidence that DISD's decisions regarding his employment related to his protected status as a member of the military. *See Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014-15 (Fed. Cir. 2001) (holding that 'in USERRA [discrimination] actions there must be an initial showing by the employee that *military status* was at least a motivating or substantial factor').") (cleaned up)); *Felton v. City of Jackson, Miss.*, No. 3:18CV74TSL-RHW, 2018 WL 2994363, at *4 (S.D. Miss. June 14, 2018) ("Plaintiff does not appear to have alleged, or attempted to allege, a claim for discrimination in violation of USERRA. To the extent that he may have sought to do so, such claim necessarily fails as plaintiff does not allege or even intimate that defendants discriminated against him because of his prior military service. Rather, he alleges only that defendants discriminated against

him on account of a disability, PTSD, which he alleges was contributed to by his military service." (citing *Carroll*, 89 F. Supp. 3d at 633; footnote omitted)).

Put another way, a USERRA claim is not "a veneer for an ADA disability discrimination claim," such that a plaintiff can "transform his ADA claim into one under USERRA solely 'because his disability is associated with his military service.'" *Carico v. UPS Ground Freight, Inc.*, No. 2:19-CV-756-WKW, 2021 WL 2545464, at *25 (M.D. Ala. June 21, 2021) (quoting *Kieffer v. Planet Fitness of Adian, LLC*, No. 17-CV-11307, 2017 WL 3581315, at *4 (E.D. Mich. Aug. 18, 2017)).

And, so, JISD is entitled to summary judgment on the USERRA claims for Briner's failure to meet her initial burden – to show that her military service, as opposed to a disability that resulted from that service, was a motivating factor in the alleged adverse employment action.

III. The Court should grant JISD summary judgment on Briner's ADA discrimination claims [Counts 1 and 2]

Briner brings her disability-discrimination claims under two theories: disparate treatment and disparate impact.

"Both disparate-treatment and disparate-impact claims are cognizable under the ADA." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (citing 42 U.S.C. § 12112(b)).

> Disparate-treatment and disparate-impact claims address two largely separate theories of discrimination. A disparate-treatment claim, the most easily understood type of discrimination, arises where a plaintiff alleges that an employer treated individuals less favorably than others on account of their protected class (here, disability). That is, liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision. By contrast, disparate-impact claims involve employment practices that are facially neutral in

their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.

*Angus v. Mayorkas*, No. 22-50600, 2023 WL 3918986, at *5 (5th Cir. June 9, 2023) (cleaned up).

Put another way, "[d]isparate impact claims do not require proof of discriminatory intent" because they instead "focus on those facially neutral employment practices that create statistical disparities which disadvantage members of protected classes at a level functionally equivalent to intentional discrimination." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 379 (5th Cir. 2007) (per curiam) (citing *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000)).

So, "[b]ecause 'the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes,' courts must be careful to distinguish between these theories." *Raytheon*, 540 U.S. at 53 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252, n.5 (1981)).

A.    Briner fails to establish a prima facie claim of disparate-impact discrimination.

Taking Briner's disparate-impact-discrimination claim first, "[a] prima facie case of discrimination by disparate impact requires that [Briner]: (1) identify the challenged employment practice or policy, and pinpoint [JISD's] use of it; (2) demonstrate a disparate impact on a protected group under [the ADA]; and (3) demonstrate a causal relationship between the identified practice and the disparate impact." *Crawford*, 245 F. App'x at 379 (citing *Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n.26 (5th Cir. 1999)); *accord Canada v. Tex. Mut. Ins. Co.*, 766 F. App'x

74, 78 (5th Cir. 2019) (per curiam) ("To establish a prima facie case of discrimination under a disparate-impact theory, a plaintiff must show: (1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two." (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008))).

Briner alleges that JISD maintains a "policy or practice of treating light sensitivity and other symptoms as not being 'physical injuries.'" Dkt. No. 32, ¶ 79; *see also id.* (also alleging that it is the District's "policy or practice [to] insist[ that] these symptoms resulted from Briner's past military sexual trauma and PTSD").

But, in response to JISD's argument that Texas law establishes that its Board of Trustees retains final policymaking authority, *see* Dkt. No. 36-1 at 15-16 (citing *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 248 (5th Cir. 2003); TEX. EDUC. CODE § 11.151(b)), Briner offers no evidence that either of these alleged policies is an actual policy of the District (because it was made by its policymaking authority).

And, even had she identified evidence to support the policy-or-practice requirement, Briner still fails to establish a prima facie disparate-impact claim under the ADA.

While she alleges that JISD's policies or practices "have a significant adverse impact on teachers or other school district employees who suffer from PCS or have a history of PTSD, because they are statistically less likely to receive their statutory assault leave benefit," Dkt. No. 32, ¶ 80, Briner fails to offer statistical evidence that can support the disparate-impact theory that she advances.

That is because, once a plaintiff "identif[ies with evidence] the employment practice that has the allegedly disproportionate impact," she must then "establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination." *Holcomb v. SOMA Res., Inc.*, No. 1:16-cv-191-BL, 2018 WL 1382402, at *4 (N.D. Tex. Mar. 16, 2018) (quoting *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (citing *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977 (1988))); *see also Canada*, 766 F. App'x at 78 ("Satisfying the second element typically requires establishing that the practice or policy had a statistically significant adverse impact on the protected class." (citing *Stout*, 282 F.3d at 860)).

"[T]o create a prima facie case for disparate impact," the statical evidence required to establish causation must be "properly tailored," not "focuse[d] on disparities with the general population" – and the practice in question must be "the cause of any statistical imbalance." *Crawford*, 245 F. App'x at 379-80 ("While Crawford's statistics may be accurate, they are not properly tailored to create a prima facie case for disparate impact, as she focuses on disparities with the general population, rather than the applicant pool. Further, even if the court accepted Crawford's statistical analysis, she has not shown that the use of background checks is the cause of any statistical imbalance. As a result, Crawford has failed to create a prima facie case of disparate impact discrimination, and the district court properly granted summary judgment on this claim."); *accord Canada*, 766 F. App'x at 78-79 ("Even if the court were to accept at face value Canada's premise that background

checks, generally, have a disproportionate impact on the black population, generally, her claim would still fail. Reliance on a policy's disparate impact on the general population, rather than on the applicant pool, is misplaced. Among other things, to establish a disparate impact, Canada needed to show that the specific type of background-check policy [the defendant] uses to screen candidates disproportionately impacts black applicants who are otherwise qualified. She needed to establish a racial disparity between the employer's work force and the pool of applicants, and then tie that disparity to the use of background checks. Canada has done neither. Her disparate-impact claim fails.").

Here, Briner asserts that "Dr. Gaudet's opinions regarding statistics ... support [the] disparate impact claims." Dkt. No. 39 at 18. And Briner alleges that "Dr. Gaudet is familiar with and uses the information and statistics published by the United States Department of Veterans Affairs on military sexual trauma and PTSD" that "can be found online" and are "attached to Dr. Gaudet's Affidavit" offered as evidence to oppose summary judgment. *Id.* Briner then discusses what these publications purport to show about veterans and PTSD (and female veterans in particular) and concludes that, "[b]ased on Dr. Gaudet's knowledge, skill, training, experience and education, and these statistics, it is her expert opinion that when the physical injuries described above are interpreted by employers as mental or emotional problems, such an interpretation has a significant adverse effect on employees with a pre-existing history of PTSD and military veterans as a group." *Id.*

But, just as with the plaintiffs in *Crawford* and *Canada*, even if the Court were

to accept Briner's conclusions at face value, that would not advance the causation prong in this case because the statistics that Briner intends to introduce, if they count as a statistical analysis, are not tailored to the District's policy or practice that she challenges in this lawsuit.

> B. **Briner fails to establish a prima facie claim of disparate-treatment** <u>discrimination.</u>

When an employee brings a disparate-treatment claim "under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a Title VII case." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2015) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013)).

"*McDonnell Douglas* concerned the order of proof in an employment-discrimination action when the employee submits no direct evidence of discrimination." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 n.2 (5th Cir. 2021), as revised (Nov. 26, 2021). That is, "*McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340 (2020) (citations omitted).

Other Courts of Appeals decisions have over the years described "the *McDonnell Douglas* burden shifting framework [as] a useful tool to assist plaintiffs at the summary judgment stage so that they may reach trial." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (cleaned up). Panel decisions of the United

States Court of Appeals for the Seventh Circuit have observed that "[t]he plaintiff's task in opposing a motion for summary judgment is straightforward: he must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that his employer took an adverse action against him because of his race. The structured inquiry introduced by *McDonnell Douglas* … [was] supposed to facilitate that task," *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013), and "is designed to help plaintiffs raise an inference of discrimination during pretrial proceedings," *Diettrich v. Nw. Airlines, Inc.*, 168 F.3d 961, 965 (7th Cir. 1999).

And, more recently, the United States Supreme Court "assume[d] without deciding that the *McDonnell Douglas* framework applies at the summary-judgment stage of litigation." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 n.2 (2025). As the Supreme Court observed, "[t]he *McDonnell Douglas* framework aims to bring the litigants and the court expeditiously and fairly to th[e] ultimate question in a disparate-treatment case – namely, whether the defendant intentionally discriminated against the plaintiff." *Id.* at 308 (cleaned up). And, so, the Court should apply this framework to Briner's ADA-disparate-treatment claim.

"This analysis first requires [Briner] to establish a prima facie case of discrimination." *LHC Grp.*, 773 F.3d at 694 (citation omitted). If she does, then JISD "must articulate a legitimate, nondiscriminatory reason for" denying Briner's requests for assault leave. *Id.* (citation omitted). "Finally, the burden shifts back to [Briner] to show that [the District's] proffered reason is pretextual." *Id.* (citations omitted). And, "[i]n the Rule 56 context, a prima facie case of discrimination plus a

showing that the proffered reason is pretextual is typically enough to survive summary judgment." *Id.* (citation omitted).

"To establish a prima facie case of disparate treatment due to disability, [Briner is] required to show: (1) she is disabled; (2) she was nonetheless qualified to do the job; (3) an adverse employment action was taken against her; and (4) she was replaced by or treated less favorably than non-disabled employees." *Mzyk v. N.E. Indep. Sch. Dist.*, 397 F. App'x 13, 15 n.3 (5th Cir. 2010) (per curiam) (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000)).

Starting with the disability and adverse-action prongs, the District does not contest either but instead contends that Briner has failed to provide evidence that she was qualified to do the job at the time she stopped working and failed to provide evidence that she was treated less favorably than a non-disabled employee. *See, e.g.*, Dkt. No. 36-1 at 12-13; Dkt. No. 41 at 2-4.

Briner does not take on the District's first argument directly but argues that it makes little sense: "Defendant's argument is that it can deny this term and condition" – statutory leave – "in a discriminatory fashion to employees who need it because they need it, and they can't sue because if they're qualified for this benefit of employment, they're no longer qualified for their job." Dkt. No. 39 at 19.

Regardless, to avoid summary judgment, it remains Briner's burden "to introduce evidence that would permit a reasonable trier of fact to find that she was qualified." *Noles v. Quality Estates, Inc.*, No. 3:02-cv-491-D, 2003 WL 22169770, at *2

(N.D. Tex. Sept. 9, 2003) ("[Defendant's] contention that [Plaintiff] cannot prove she was qualified does not have to be supported by the documentary evidence. [Defendant] can simply point to the absence of evidence, and the burden shifts to [Plaintiff] to introduce evidence that would permit a reasonable trier of fact to find that she was qualified." (cleaned up)).

And Briner "must establish that she was qualified for the job at the time of the adverse employment action," *id.* at *1 (citations omitted), by "show[ing] that either (1) [she] could perform the essential functions of the job in spite of her disability, or, if she could not, (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of the job," *LHC Grp.*, 773 F.3d at 697 (cleaned up).

"A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *Id.* (citation omitted). And reasonable accommodations include

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*Id.* (quoting 42 U.S.C. § 12111(9)(B)).

Briner fails to come forward with evidence that would permit a reasonable trier of fact to find that she was qualified at the time that she stopped working/requested leave that was denied. And JISD introduces Briner's own testimony admitting that she could not perform essential functions of her job and admitting that no accommodation would have allowed her to do so. *See* Dkt. No. 36-1 at 12-13 (citing Dkt. No. 36-3 at 23 & 28).

And, while Briner asserts, in support of the fourth prima facie element, that she has identified a comparator – "another teacher [who] was assaulted in 2017, suffered a shoulder injury, and had to have surgery," who, "[u]nlike Briner, … had no history of PTSD," but who received paid assault leave, Dkt. No. 39 at 21 (citations omitted) – "[a]n employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is [typically] satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)).

And, as the District replies, "unlike [Briner], that teacher required surgery to recover from a student assault," as Briner points out. Dkt. No. 41 at 4 (citation omitted).

And, so, the undersigned agrees with JISD that Briner "has not shown a valid comparator" – one under nearly identical circumstances. *Id.*

It does seem that the District raised the comparator argument for the first time in its reply brief, and courts in this district routinely will not consider arguments made for the first time in a reply. *See, e.g., Brown v. Bridges*, No. 3:12-cv-4947-P, 2014 WL 2777373, at *6 (N.D. Tex. June 19, 2014) (collecting cases).

But "[d]istrict courts may consider new arguments made in a reply brief when those arguments respond to unexpected issues raised for the first time in the opposing

party's response." *Subotic v. Jabil, Inc.*, No. 22-13880, 2024 WL 797140, at *7 (11th Cir. Feb. 27, 2024) (per curiam) (citation omitted).

And, to the extent that JISD should have expected Briner to raise this issue, the Court need not find that had Briner offered evidence as to a true comparator, she would have established a prima facie case where she has not offered evidence to demonstrate that she was qualified for her position at the time of the adverse employment action.

So, in sum, the undersigned finds that Briner has not established a prima facie case of disparate-treatment discrimination under the ADA.

IV.    **The Court should deny JISD's request for summary judgment on Briner's ADA** <u>retaliation claim.</u>

"As with the other claims under the ADA, a retaliation claim not supported by direct evidence is evaluated under the *McDonnell Douglas* burden-shifting framework." *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 488 (5th Cir. 2023) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)).

The District initially argued only that summary judgment is proper on this claim because Briner failed to produce evidence as to its prima facie elements. *See* Dkt. No. 36-1 at 17-18; *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (which are "that 1) [the plaintiff] engaged in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action" (cleaned up); *accord Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999); *Mueck*, 75 F.4th at 488.

Briner responded by asserting that her evidence reflects that her contract was

non-renewed shortly after she filed a charge of discrimination and this lawsuit, and, so, she has satisfied each required element. *See* Dkt. No. 39 at 23 (citations omitted); *see also* Dkt. No. 32, ¶ 90 ("Subsequent to Briner's EEOC charge, and within thirty (30) days of her filing this lawsuit on March 4, 2024, on April 15, 2024, Joshua ISD for the first time non-renewed Briner's teaching contract, terminating the employment relationship between the two parties. Briner will show this was the very type of retaliation prohibited by the ADA and the ADAAA, and she sues for retaliation.").

And JISD replied that, even if that is true, Briner still fails to offer evidence that its reason for her termination is pretextual:

> "[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Plaintiff submitted testimony from the School District's deposition, which actually shows the School District did everything it could to accommodate Plaintiff: "We wanted [Plaintiff] to come back to Joshua [ISD], and we offered contracts and accommodations for her to do so … We needed her in the classroom." [Doc. 38-2 at P's MSJ Appendix 180, 141:6-9]. Texas law limits a probationary teaching contract to a total of four years. TEX. EDUC. CODE § 21.102. Plaintiff's fourth year of a probationary contract was 2023-2024. A further contract could only be offered under certain conditions, such as Plaintiff's effective instructional performance in the subject year. And because Plaintiff was not working at that time, Plaintiff could not be evaluated; therefore, the School District could not have extended Plaintiff's employment. In sum, because Plaintiff fails to offer any competent evidence from which a jury could find retaliation was the real motive, this claim should be dismissed.

Dkt. No. 41 at 6-7.

Again, courts generally will not consider an argument raised for the first time in reply. And, as other courts have observed, "this rule applies with particular force

in the summary-judgment context." *Maese-Thomason v. Embry-Riddle Aeronautical Univ.*, No. CV-20-08338-PCT-DWL, 2023 WL 5822513, at *13 (D. Ariz. Sept. 8, 2023) (citations omitted).

Still, "[a] district court may grant a motion for summary judgment on grounds not raised by the moving party, provided that the non-moving party is first given notice and a reasonable time to respond." *Grant v. Amazon.com Servs. LLC*, No. 3:22-cv-439-S-BH, 2023 WL 6278912, at *5 (N.D. Tex. Sept. 1, 2023) (citing FED. R. CIV. P. 56(f); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2001); *Ross v. Univ. of Tex.*, 139 F.3d 521, 527 (5th Cir. 1998)), *rec. accepted*, 2023 WL 6276735 (N.D. Tex. Sept. 26, 2023), *appeal dismissed*, 2024 WL 3755984 (5th Cir. Aug. 12, 2024). And "[t]he 14-day period for objecting to a magistrate judge's recommendation to grant a motion for summary judgment is sufficient notice under Rule 56(f)." *Id.*; *see also, e.g.*, *St. Paul Ins.*, 224 F.3d at 435.

But, if the undersigned could apply this approach to consider a movant's argument raised first in reply, it would not be appropriate to do so here where the District's asserted legitimate, nondiscriminatory reason for not renewing Briner's contract – "[a] further contract could only be offered under certain conditions, such as Plaintiff's effective instructional performance in the subject year," but, "because Plaintiff was not working at that time, Plaintiff could not be evaluated; therefore, the School District could not have extended Plaintiff's employment," Dkt. No. 41 at 6 – does not appear to be supported by record evidence, *see, e.g.*, *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004) ("An employer may avoid liability for charges of both

discrimination and retaliation by producing evidence tending to show that it had a legitimate, nondiscriminatory reason for its disputed decision.").

So, on this record, the Court should deny JISD's request for summary judgment as to Briner's retaliation claim. *Cf. Maese-Thomason*, 2023 WL 5822513, at *13 ("[T]he only argument fairly raised in Defendant's motion is that Plaintiff cannot satisfy the second and fourth elements of the *McDonnell Douglas* test. She can, for the reasons stated above. Thus, although the Court harbors some doubt as to ultimate viability of Plaintiff's Title VII disparate treatment claim, summary judgment is not warranted on this record." (citation omitted)).

V. **The Court should deny JISD's request for summary judgment on its affirmative defenses that Briner's claims are barred by res judicata and collateral estoppel.**

Res judicata and estoppel are affirmative defenses that should be pleaded. *See* FED. R. CIV. P. 8(c)(1).

Answering the FAC, JISD pleaded that "Plaintiff's claims are barred by res judicata" and "by collateral estoppel. For example, the decision by the Texas Commissioner of Education issued on June 26, 2024 precludes Plaintiff's claims as a matter of law." Dkt. No. 33 at 14, ¶¶ 13 & 14.

JISD now moves for summary judgment on these affirmative defenses, explaining that, because the Commissioner, acting in a judicial capacity, resolved against Briner questions of fact on which Briner's "claims necessarily rely," "all of [the] claims should be dismissed as a matter of law" under Rule 56(a). Dkt. No. 41 at 8; *see also* Dkt. No. 36-1 at 20-22; Dkt. No. 36-3 at 53-63.

Notably, the Commissioner resolved disputed fact questions as

follows: "The injuries for which [Plaintiff] requested assault leave were
not physical injuries…. The injuries for which [Plaintiff] needed time off
to recuperate were not caused by the student assault…. The local record
does not establish that the leave [Plaintiff] required was caused either
by physical injuries or the student assault." Those findings of fact
preclude all of Plaintiff's claims in this case.

Dkt. No. 36-1 at 21 (cleaned up; quoting Dkt. No. 36-3 at 54); *see also* Dkt. No. 36-3

at 53-54 (The Commissioner's findings of fact in full are that "Petitioner was a special

education teacher for Respondent during the 2021-2022 school year"; that, "[o]n

October 26, 2021, Petitioner was assaulted by a student who tore a set of blinds off a

wall in her classroom, hit her on the back of the head with the blinds, then punched

her in the neck"; that Petitioner received workers' compensation benefits for the

injuries sustained from the student's assault on Petitioner"; that "Petitioner

requested assault leave benefits"; "Respondent denied Petitioner's request for assault

leave benefits"; "[t]he injuries for which Petitioner requested assault leave were not

physical injuries"; "[t]he injuries for which Petitioner needed time off to recuperate

were not caused by the student assault"; and that "[t]he local record does not establish

that the leave Petitioner required was caused either by physical injuries or the

student assault.").

"Under res judicata, a final judgment on the merits of an action
precludes the parties or their privies from relitigating issues that were
or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90,
94 (1980). "[R]es judicata encompasses two separate but linked
preclusive doctrines: (1) true res judicata or claim preclusion and (2)
collateral estoppel or issue preclusion." *Comer v. Murphy Oil USA, Inc.*,
718 F.3d 460, 466–67 (5th Cir. 2013) (quoting *Test Masters Educ. Servs.,
Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)). True res judicata "bars
the litigation of claims that either have been litigated or should have
been raised in an earlier suit," *Test Masters*, 428 F.3d at 571, while
collateral estoppel "precludes relitigation of only those issues actually
litigated in the original action, whether or not the second suit is based

on the same cause of action," *Moch v. E. Baton Rouge Par. Sch. Bd.*, 548 F.2d 594, 596 (5th Cir. 1977); *see also Allen*, 449 U.S. at 94.

*Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016); *see also Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 n.3 (5th Cir. 1986) ("Res judicata, as the term is sometimes sweepingly used, embraces both claim preclusion, or true res judicata, and collateral estoppel, or issue preclusion." (cleaned up; quoting *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978))); *Wills v. Ariz. Structures Worldwide, L.L.C.*, 824 F.3d 541, 545 n.5 (5th Cir. 2016) ("Although there is a modern tendency to conflate the two terms, they are distinct. *See White v. World Fin. of Meridian, Inc.*, 653 F.2d 147, 150 & n.5 (5th Cir. Unit A Aug. 1981). '[R]es judicata forecloses all that which might have been litigated previously, [whereas] collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.' *In re Shuler*, 722 F.2d 1253, 1255 (5th Cir. 1984) (citation omitted).").

"[R]egardless which of the two doctrines is invoked, 'the idea is that an issue definitively settled once is 'forever settled as between the parties.'" *Oyekwe v. Research Now Grp., Inc.*, 542 F. Supp. 3d 496, 506 (N.D. Tex. 2021) (cleaned up; quoting *Langley v. Prince*, 926 F.3d 145, 163-64 (5th Cir. 2019) (en banc)).

And this idea "applies even when an administrative agency was the venue of the first action, provided the agency acted in a judicial capacity, gave the parties sufficient opportunity to present their case, and resolved any disputed fact questions properly brought before it." *Cooper v. Int'l Offshore Servs., L.L.C.*, 390 F. App'x 347, 351 (5th Cir. 2010) (per curiam) (citing *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 889

(5th Cir. 2004)).

Indeed, almost sixty years ago, the Supreme Court held that, "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966).

And, observing that, "whenever possible the courts should support the finality of administrative orders in keeping with the public policy favoring an end to litigation, whether it be in the administrative or judicial process," and that "[c]ontinued litigation of issues or piecemeal litigation should be discouraged," the Texas Supreme Court has applied the doctrine of res judicata to a ruling of the Texas Commissioner of Education. *Westheimer ISD v. Brockette*, 567 S.W.2d 780, 787, 789 (Tex. 1978).

Still, JISD, as "a defendant … asserting an affirmative defense," "must establish beyond peradventure all of the essential elements of the … defense to warrant judgment in [its] favor." *Fontenot*, 780 F.2d at 1194.

That is, the District must show the Court that, even "draw[ing] all reasonable inferences in favor of [Briner]," *Chaplin*, 307 F.3d at 372, the Commissioner's findings – affirming JISD's denial of assault leave because Briner's injuries were neither physical injuries nor caused by the student assault – demonstrate that there are no genuine and material fact disputes and that the District is entitled to summary judgment as a matter of law on all claims asserted by Briner.

And, while JISD may prevail on its defense should this case proceed to trial, the District has not met its heavy summary-judgment burden on the record now before the Court.

For one, even focusing only on the ultimate elements of a discrimination claim – an adverse employment action taken against a plaintiff because of a protected status – it's possible that a mixed-motive or motivating-factor theory could apply to Briner's ADA discrimination claims. *See, e.g.*, *Williams v. Crawford & Co.*, No. 3:20-cv-1553-E-BH, 2021 WL 6065824, at *8 n.7 (N.D. Tex. Nov. 24, 2021) ("Even though the [United States Court of Appeals for the] Fifth Circuit has declined to decide whether the mixed-motives alternative in ADA cases survived the Supreme Court's decision in *Gross[ v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)], *see Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 371 n.4 (5th Cir. 2016), it affirmed the existence of the standard in disability discrimination cases after Gross, *see LHC Group, Inc.*, 773 F.3d at 702, and it continues to authorize a plaintiff to alternatively establish an employer's liability for disability discrimination under a 'motivating factor' causation standard, *see, e.g.*, *Jones v. Lubbock Cty. Hosp. Dist.*, 834 F. App'x 923, 927 (5th Cir. 2020); *Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 235 n.12 (5th Cir. 2015)."), *rec. accepted*, 2021 WL 6063640 (N.D. Tex. Dec. 20, 2021).

And, if so, the Commissioner's findings would not necessarily prevent a court from concluding that the adverse action against Briner was in no way based on a protected status.

And, to the extent that Briner has not made this argument explicitly, the

Court cannot ignore its own knowledge of the law when determining whether a summary judgment movant has established beyond doubt all essential elements of its affirmative defense. *Cf. Joseph v. Bartlett*, 981 F.3d 319, 338 & n.78 (5th Cir. 2020) ("Inadequate briefing can cause parties to forfeit claims and arguments, but we must apply settled case law." (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("A court engaging in review of a qualified immunity judgment should [ ] use its full knowledge of its own and other relevant precedents."))).

The undersigned similarly finds that the Commissioner's findings do not foreclose Briner's ADA retaliation claim for the reasons set out above and because, "[t]o satisfy [the] opposition requirement" for a retaliation claim, Briner "need only show that she had a 'reasonable belief that [JISD] was engaged in unlawful employment practices.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Byers v. Dall. Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)); *see also Sherrod*, 132 F.3d at 1122 ("Sherrod has made a prima facie case of retaliation. First, Sherrod engaged in protected activity by filing EEOC complaints against American based on the reasonable belief that American's actions violated the ADA and ADEA.").

## Recommendation

The Court should grant in part and deny in part Defendant Joshua Independent School District's motion to strike Plaintiff Tifiny Dawn Briner's summary-judgment evidence [Dkt. No. 42] to the extent that the Court should deny the motion to strike as submitted and instead treat it as objections accounted for in

considering Defendant's motion for summary judgment [Dkt. No. 36], which the Court should grant in part and deny in part to the extent that Defendant should be granted summary judgment on all Plaintiff's claims but for her claim of retaliation under the Americans with Disabilities Act and the Court should deny Defendant summary judgment on its affirmative defenses of res judicata and collateral estoppel.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 16, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

- 31 -